IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DASHAUN PETERKIN                \*
      Plaintiff
                                                   \*
   v.                                  CIVIL ACTION NO. JFM-10-1598
                                                   \*
KATHLEEN GREEN, et al.,
      Defendants                \*
                                             \*\*\*\*\*\*

## **MEMORANDUM**

Plaintiff brings this self-represented action against Warden Kathleen Green, Correctional Officer Corbin, and Correctional Officer Maddox.[1] ECF No. 1. He asserts jurisdiction under 42 U.S.C. § 1983. Plaintiff seeks compensatory damages. Pending is defendants' motion to dismiss, or in the alternative for summary judgment. ECF No. 14. Plaintiff has responded. ECF No. 20. After review of the record, the court finds a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2011).

### 1. Factual Background

Plaintiff claims that on July 10, 2009, at approximately 1:30 p.m., he informed defendants Corbin, Maddox, and an unknown officer that the drain outside his cell was overflowing causing water mixed with urine, feces, and bacteria to flood into his cell. Plaintiff alleges that defendants Corbin and Maddox refused to permit plaintiff to clean up the flooding and refused to call "blood spill workers" to properly clean the contaminated area. Plaintiff further alleges that he advised Corbin and Maddox that he felt sick and vomited several times during the night but they denied him medical care. Plaintiff states Corbin told him, "you're not going to see no-fucking body, and you're not going to have your cell cleaned nigger!" Plaintiff states that he advised Officer Campbell, the

1

tier officer on the 8-4 shift, about the drain and that the prior shift refused to have it cleaned. Campbell had a "blood spill inmate" come clean the area inside plaintiff's cell around 9:00 a.m.

Plaintiff states that he filed a sick call slip that same day but was not seen by medical personnel. Plaintiff states he filed several sick call slips indicating he was "exposed to contaminated water," felt sick and vomited several times the day of the incident. He states that he never received medical attention for his injuries. Plaintiff alleges that Corbin and Maddox failed to deliver his sick call slips and harassed and threatened him about his filing a complaint regarding the backed up drain. He further alleges that he continues to experience headaches and his feet continue to "break out," which he attributes to the water flooding his cell. ECF Nos. 1 & 20.

Defendants maintain that on July 10, 2009, a drain on plaintiff's tier over flowed during the 4 p.m. to 12 p.m. shift. Corbin noted in a Matter of Record that he was advice by the Officer in charge of the shift regarding the drain over-flow. He was advised that the overflow did not contain feces, only black mud or grease and sanitation workers had cleaned and mopped the area. Corbin directed Correctional Officer Conquest to inspect the tier for any bodily waste. During the inspection plaintiff advised Conquest that he believed there was feces outside of his cell. Conquest reported to the control center that there was no feces on the tier; the substance looked like grease and had no odor. ECF No. 14, Ex. 1. Conquest was instructed to monitor the drain. Sanitation workers were again sent to the area to clean the tier. Plaintiff requested a mop to clean his cell. Conquest declined plaintiff's request because plaintiff had been involved in a use of force wherein he "broke a barricade and took a piece of wood and would not give it back." Corbin avers that the overflow did not reach plaintiff's cell and therefore no cleanup or mopping of this cell was required.[2] Corbin

---

[1] The Clerk shall amend the docket to reflect the correct spelling of defendant's name.
[2] Plaintiff avers that the overflow did reach his cell. He also provides an affidavit from inmate Booth who witnessed

denies calling plaintiff derogatory names. Corbin and Maddox deny having harassed or threatened plaintiff. *Id*., Ex. 2 & 3.

Additionally, Corbin denies ignoring plaintiff's request for medical care. To the contrary, Corbin arranged for the pill call nurse to be escorted to plaintiff's cell but plaintiff refused to be evaluated by her. Maddox also avers that he escorted the nurse conducting pill call to plaintiff's cell but plaintiff declined evaluation. *Id*., Ex. 3.

Plaintiff's medical records demonstrate that plaintiff filed a sick call slip on August 1, 2009 regarding the incident. He was evaluated on August 4, 2009; bilateral peeling and itching of the skin on the bottom of plaintiff's feet and between his toes was noted. Plaintiff was prescribed an ointment. There is no record of plaintiff submitting any additional sick call slips regarding the July 10, 2009 event. *Id*., Ex. 4. Plaintiff was seen by medical staff on August 14, 16, 21 and 23 for unrelated medical issues. He did not complain of headaches or problems with his feet at any of those medical appointments. *Id*.

## 2. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

---

the events and who avers that the overflow went into plaintiff's cell. Booth further avers that the overflow smelled. ECF No. 20, Attachment.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### 3. Analysis

**A.     Respondeat Superior**

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not be based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has alleged no facts against Warden Kathleen Green and his claim against Green shall be dismissed.

**B.     Conditions of Confinement**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

Plaintiff's description of a flooded cell containing human waste, if taken as true, may well

state a claim for cruel and unusual punishment. *See Goodson v. City of Atlanta*, 763 F.2d 1381, 1386-88 (11th Cir. 1985) (overflowing toilets with feces on the cell floors together with other unsanitary conditions violated constitutional rights); *cf Beveratti v. Smith,* 120 F.3d 500, 504 (4th Cir. 1997) (even if inmates found cells infested with vermin, smeared with human feces and urine, flooded with water, and unbearably hot…conditions in administrative segregation were not so atypical that exposure to them for six months imposed significant hardship-dismissing plaintiff's due process claims regarding confinement to administrative segregation.) However, "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). There is no evidence to support plaintiff's bald averment that he suffered injury as a result of the flooding of his cell. While plaintiff avers that he vomited and suffered headaches over a prolonged period of time up to and including the filing of the instant complaint, the medical records demonstrate that he did not complain of any of these problems when he was evaluated by medical staff on four separate occasions during the weeks following the incident.[3] The court is mindful of plaintiff's contention that his sick call slips were destroyed by defendants. The medical record reveals however, that he was seen by medical staff on at least four occasions the month following the flooding of his tier and at no time voiced complaints regarding headaches or continuing foot problems. Simply stated, the medical record belies plaintiff's averment that he was in any way injured by the flooding of his cell.

Even were the court to conclude that plaintiff suffered serious injury as a result of the less than 24-hour flooding of his cell, the court does not find that defendants subjectively disregarded a

---

[3] As noted supra, the record also demonstrates, although plaintiff disputes it, that he declined medical evaluation on the day the tier was flooded.

serious risk of harm to plaintiff's safety. The subjective component requires "subjective recklessness" in the face of the serious condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. Defendants aver that they believed the flooding on the tier did not reach plaintiff's cell, did not contain human waste, and was sufficiently cleaned from the tier. Corbin directed Correctional Officer Conquest[4] to inspect the tier. Conquest reported back to Corbin that the flooding on the tier did not reach plaintiff's cell and did not contain human waste. Given defendants' subjective beliefs concerning the lack of flooding into plaintiff's cell, lack of human waste on the tier, and concomitant lack of risk of harm to plaintiff, the court cannot find that defendants acted with a "sufficiently culpable state of mind." Summary judgment is appropriate.[5]

**C.      Denial of Medical Care**

In order to state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but

---

[4] Conquest is not a party to these proceedings.

[5] The court notes that due to plaintiff's continued complaints, at the shift change, less than 24 hours after the flooding of the tier, an inmate worker cleaned plaintiff's cell. Plaintiff had not been provided a mop to clean the cell himself

7

failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). The record evidence demonstrates that plaintiff was offered and refused medical attention on the date of the incident. ECF Ex. 14, Ex. 1-3. He was evaluated by medical personnel on August 4, 2009 for bilateral peeling and itching on the bottom of his feet and between his toes. He was prescribed and received ointment. There is no evidence he sought further treatment for any problems with his feet. Plaintiff was evaluated by medical staff on August 14, 16, 21, and 23, 2009 for unrelated reasons. At no time during these evaluations did plaintiff complaint of headaches or request follow up treatment for his feet. *Id*. There is simply no evidence to support plaintiff's bald allegations that defendants interfered with his receipt of medical care.

**D.     Harassment**

Plaintiff's claim that Corbin and Maddox used inappropriate language and harassed him fails to state a claim. Defendants deny that that the interaction occurred as alleged. In any event, "not all

---

due to safety concerns.                                                8

undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, plaintiff's allegations regarding harassment fail to state a claim.

**E.     Retaliation**

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. There is nothing in the record to suggest that defendants acted in the manner alleged.

Plaintiff claims as retaliation that defendants failed to deliver his requests for medical care. As noted above, defendants deny plaintiff's assertion. Moreover, the medical record demonstrate that plaintiff was offered medical care on the day of the incident but declined evaluation and was seen several times throughout the following month but offered no complaints regarding the injuries he allegedly suffered as a result of water flooding his cell. "In the prison context, we treat [claims

9

of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996). Plaintiff cannot prevail on this claim.

### 4. Conclusion

The motion to dismiss or for summary judgment shall be granted. A separate Order shall be entered reflecting the ruling set forth herein.

__September 7, 2011__  ___/s/_____
Date                    J. Frederick Motz
                        United States District Judge